UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

SHAWN BROOKS,

        Plaintiff,

        v.                                      Case No. 22-C-1233

SGT. KELLER,

        Defendant.

---

## DECISION AND ORDER

Plaintiff Shawn Brooks, who is representing himself, is proceeding on an Eighth Amendment claim that Defendant Sgt. Keller failed to protect him from an assault by another inmate at the Racine Correctional Institution on November 22, 2018. Dkt. Nos. 1 & 8. On August 18, 2023, Defendant filed a motion for summary judgment. Dkt. No. 20. Because no reasonable jury could conclude that Defendant had knowledge of a substantial risk of serious harm, the Court will grant the motion for summary judgment and dismiss this case.

## UNDISPUTED FACTS

Plaintiff is an inmate at the Racine Correctional Institution, where Defendant is a correctional officer. Dkt. No. 22, ¶¶1-2. The dispute in this case arises from an assault in the dayroom that was caught on videotape. *See* Dkt. No. 24-1 & 24-2. On November 22, 2018, Plaintiff, inmate Vessel, and two other inmates were playing cards at a table in the dayroom. *Id*. At around 6:27 p.m., inmate Vessel suddenly stands up, throws his cards in Plaintiff's face, and punches Plaintiff four times, until Plaintiff falls to the floor. *Id*. The entire altercation, from the time inmate Vessel threw the cards at Plaintiff to his fourth punch, was four to five seconds long. *See* Dkt. No. 24-1 at 0:05-0:09; Dkt. No. 24-2 at 0:27-0:31.

According to Plaintiff, a verbal altercation had actually begun minutes earlier when another inmate at the card table called inmate Vessel a "cheater" and Plaintiff agreed. Dkt. No. 35, ¶¶5-7. Inmate Vessel allegedly responded in a loud voice, "I don't cheat. I just kick asses." *Id.*, ¶6. Inmate Vessel then allegedly went on a "four to five minute tirade rant," claiming he didn't cheat, and saying "I don't play I'll kick your ass." *Id.*, ¶7. After "minutes of verbal abuse," inmate Vessel threw cards in Plaintiff's face and punched him with a closed fist several times. *Id.*, ¶9.

According to Defendant, he doesn't remember where, specifically, he was four or five minutes before the altercation. Dkt. No. 22, ¶15. He states that he was assigned to the Behavioral Health Unit (BHU) that day, between 2:00 p.m. and 10:00 p.m., and his duties included answering phone calls, completing rounds, and occasionally checking on the dayroom, if inmates were gathered in there. *Id.*, ¶¶3-4, 16. Defendant states that he heard two inmates arguing and a scuffling sound, so he looked towards the dayroom. *Id.*, ¶¶18, 22. By the time Defendant and another officer reached the dayroom, the altercation was already over. *Id.*, ¶¶26-30. Defendant states that he did not hear any verbal threats immediately before the altercation and he had no prior knowledge on whether or not inmate Vessel and Plaintiff had animosity between each other. *Id.*, ¶¶9-10, & 19. Toward that end, Plaintiff does not dispute the fact that Defendant had no prior knowledge about possible animosity between Plaintiff and inmate Vessel. Dkt. No. 34, ¶¶9, 11-12. Defendant states that, when he realized an altercation was happening, he immediately told staff to inform the Control Center to send more staff, then he and another officer entered the dayroom to yell, "stop fighting," a directive both inmates complied with. *Id.*, ¶¶23, 29, 35. Later, Defendant asked inmate Vessel what happened and why he reacted violently; and inmate Vessel stated that Plaintiff was "talking shit to him about the card game." *Id.*, ¶32.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

2

Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co*., 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates. *Balsewicz v. Pawlyk*, 963 F.3d 650, 654-55 (7th Cir. 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). To survive summary judgment on an Eighth Amendment deliberate indifference claim, Plaintiff must establish that: (1) he was exposed to a substantial risk of serious harm; and (2) Defendant knew of and disregarded that substantial risk of serious harm. *Id*. at 654. "In failure-to-protect cases, plaintiffs normally prove actual knowledge of impending harm by showing that they complained to prison officials about specific threats to their safety." *Moore v. W. Illinois Corr. Ctr*., 89 F.4th 582, 591 (7th Cir. 2023). The Seventh Circuit has held that a prison official will be liable for failing to protect an inmate only if the prison official "effectively condones the attack by allowing it to happen." *See Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010). "Deliberate indifference is more than mere negligence or carelessness: it is

3

'something approaching a total unconcern' for inmate safety." *Hunter v. Mueske*, 73 F.4th 561, 566 (7th Cir. 2023) (internal citations omitted).

Defendant argues that he is entitled to summary judgment because he had no prior knowledge that inmate Vessel posed a substantial risk of serious harm to Plaintiff. Defendant states that Plaintiff never filed a request for separation from inmate Vessel nor did he communicate, either orally or in writing, any risk of harm posed by inmate Vessel prior to the altercation. Defendant states that the inmates were calmly playing cards when inmate Vessel suddenly snapped, so he had no prior knowledge of the risk of harm to Plaintiff.

The Court has reviewed videotape evidence and it confirms that Plaintiff, inmate Vessel, and two other inmates were calmly playing cards in the dayroom when inmate Vessel suddenly stood up, threw cards in Plaintiff's face, and then punched him four times. Inmate Vessel is visibly calm immediately before and immediately after the altercation. The video shows that inmate Vessel very suddenly engaged in violence then just as quickly regained himself, all within a four to five second timeframe. By the time correctional officers heard the altercation and reached the dayroom, inmate Vessel had already stopped throwing punches and no further protection was required. Based on this videotape evidence, and the fact that Plaintiff does not dispute that he never filed a request for separation or ever complained about inmate Vessel prior to the physical altercation, no reasonable jury could conclude that Defendant had actual knowledge that inmate Vessel posed a substantial risk of serious harm to Plaintiff that day.

Plaintiff argues that there was "verbal abuse" for four to five minutes prior to the physical altercation, so Defendant should have perceived the risk of harm. Plaintiff also implies that inmate Vessel is a generally violent inmate due to his placement in the BHU, so he should always be perceived as a risk of harm. Defendant disputes hearing verbal abuse prior to the altercation and states that he does not remember where exactly he was four to five minutes before the altercation. Toward that end, videotape evidence confirms that Defendant was not in the dayroom prior to the

altercation, where he might have overheard the alleged verbal abuse. *See* Dkt. No. 24-2. The Court notes that the body language of the inmates in the video is also inconsistent with Plaintiff's assertion that there was an "escalating" verbal altercation prior to the physical altercation. Every inmate in the video, including Plaintiff and inmate Vessel, is sitting calmly in the dayroom without looking around, fidgeting, or attempting to leave the dayroom in the moments prior to the physical altercation.

Finally, Plaintiff's argument that inmate Vessel is a generally violent inmate who should always be perceived as a risk of harm is undercut by his own conduct. In other words, if Plaintiff actually believed inmate Vessel posed an impending risk of serious harm to him, Plaintiff, first, would not have been sitting there playing cards with him and calling him a cheater, and second, would have attempted to leave the dayroom or notify correctional staff when the alleged verbal altercation started to "escalate." Plaintiff's own conduct shows that even *he* did not know or actually believe inmate Vessel posed an impending risk of serious harm to him. It is unfortunate that Plaintiff was attacked that day, but no reasonable jury could find that Defendant was actually aware of the possibility of that attack and "effectively condone[d] the attack by allowing it to happen." *Santiago*, 599 F.3d at 756. Accordingly, Defendant is entitled to summary judgment and the Court will dismiss this case.

## CONCLUSION

For these reasons, Defendant's motion for summary judgment (Dkt. No. 20) is **GRANTED** and this case is **DISMISSED**. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 4th day of March, 2024.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. § 1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.